IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHER N DISTRICT OF FLORIDA
PENSACOLA DIVISION

KENNETH D. JEWSON,
      Petitioner,

v.                              Case No.  3:04cv71/MCR/MD

JAMES V. CROSBY,
      Respondent.
_____

## REPORT AND RECOMMENDATION

      Before the court is an amended petition for writ of habeas corpus filed pursuant to Title 28 U.S.C. § 2254 (doc. 4).  Respondent has filed a response (doc. 13) to which petitioner has replied (doc. 18).   The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).  After careful consideration of all issues raised by petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a). It is further the opinion of the undersigned that the pleadings and attachments before the court show that petitioner is not entitled to relief, and that the petition is without merit and should be denied.

## A.    BACKGROUND AND PROCEDURAL HISTORY

      Defendant was charged in the Circuit Court of Santa Rosa County, Florida with (1) capital sexual battery (victim under 12) and (2) sexual battery upon a child (familial or custodial authority).  He was found guilty by a jury and was sentenced to two consecutive life terms.  His appeal was unsuccessful.  Petitioner then filed a timely motion for post-conviction relief pursuant to Fla.R.Crim.P. 3.850 which was summarily denied on procedural grounds.   The appellate court reversed for

consideration on the merits, and after an evidentiary hearing the trial court denied relief in three orders  (doc. 13, exhs. R, pp. 495-505, 1801-1813; T, pp. 2327-2332).[1] Petitioner's appeal of the orders denying relief was unsuccessful, and he now brings this § 2254 petition seeking federal habeas relief.  The respondent concedes that the instant petition is timely (doc. 13, p. 6).

B.    TRIAL AND RELATED PROCEEDINGS[2]

The facts developed at trial were essentially these:  Defendant met Cindy Schleicher in approximately 1978, and they were married two years later (exh. TR, p. 275).  Defendant had two children by a prior marriage (which ended in divorce), Dewayne Jewson and Tammy Rose Jewson.  Dewayne lived with the new family for a short time, until he reached adulthood.  Tammy Rose lived with her mother after defendant's first divorce.  Cindy had three children, all of whom lived with the new family.[3]  Together Cindy and defendant had two more children, Dawn and Raymond.  During the period relevant to this discussion, the family consisted of the defendant, his wife Cindy, Cindy's children Marijane, Chad, and Tammy Sue, and the couple's children Dawn and Raymond.

Defendant worked as a missionary, primarily in the United States.  He worked with churches helping them set up print shops for their publications.  Typically he would set up a print shop, train someone from the local congregation to run it, and then move on.  The family came to Santa Rosa County in February, 1986 and lived there until January, 1990 (TR. 551).  Defendant set up and operated a print shop behind a church in Santa Rosa County.

Tammy Sue, who was born on October 13, 1975, was the victim in the criminal trial involved in this proceeding.  She testified that shortly after defendant married her mother, defendant started sexually molesting her.  She remembered incidents

---

[1]  Hereafter all references to exhibits will be to doc. 13 unless otherwise noted.

[2]  The facts stated herein are those presented at trial and viewed in the light most favorable to the prosecution.  Where there are conflicting inferences and disputes exist, this Court must presume that the jury resolved such conflicts in favor of the prosecution, and must defer to that resolution. *Martin v. State of Alabama*, 730 F.2d 721,724 (11th Cir. 1984).

[3]  Cindy had another child who was retarded and institutionalized.

beginning when she was seven years old.  Defendant would place his fingers and penis on her vagina, and although he would not penetrate, he would ejaculate (TR. 101-102).  The family moved to Florida when Tammy Sue was ten years old, and defendant continued with this pattern (exh. TR. 104-105).  Tammy Sue was molested in this manner, in Florida, before she turned twelve and after, but she told no one of these incidents (*id.).*

Cindy's oldest daughter, Marijane, was very close to defendant, but he sexually molested her in the same manner as Tammy Sue (exh. TR, p. 1811), and later had intercourse with her while she was still a minor (exh. TR, p. 182).  Marijane married a Mexican citizen after she turned eighteen and lived with him in Mexico.  Two months after her marriage she told her husband about her sexual relationship with the defendant (exh. TR, p. 186).  In December 1989 Marijane's husband wrote letters to defendant and to a close family friend and neighbor, Mrs. Tutt, describing what Marijane had told him (exh. TR, p. 186-187).  Mrs. Tutt confronted defendant, who asked her not to say anything about it (exh. TR, p. 249).  A month later, in early January 1990, defendant confessed the relationship with Marijane to his wife, Cindy (exh. TR, p. 281-282).  State child protective authorities were called on January 3, 1990 with a report that Cindy's son, Chad, had been beaten by the defendant (exh. TR, p. 151).  Nothing came of that claim, but during the investigation the investigator was made aware of defendant's sexual relationship with Marijane  (exh. TR, p. 373-375).  As part of her investigative routine, the investigator asked both Chad and Tammy Sue (who were by then sixteen and fourteen, respectively), if the defendant had sexually molested either of them, and they both denied it *(id*).  Shortly thereafter Cindy packed up her children and moved to Wisconsin, her original home.  Defendant went looking for them, and Cindy went to a local court and signed an affidavit in support of a request for a restraining order.  In that affidavit she stated that defendant had tried to buy sexual favors from Tammy Sue, but said nothing of any physical abuse (exh. TR, p. 293-294).  In a subsequent family court proceeding defendant was given visitation rights to the couple's two children, Dawn and Raymond.  Cindy then decided that since defendant was going to be allowed to see

the children, she would be better off living in Florida.  She returned to Florida and reported defendant's sexual abuse of Tammy Sue to law enforcement in November, 1990 (exh. TR, p. 154).  Tammy Sue was examined by a physician, but no written report of the examination has ever surfaced.

Defendant's daughter from his first marriage, Tammy Jewson testified as a similar acts witness, and told of being sexually abused by the defendant in essentially the same manner as Tammy Sue and Marijane, although there was never intercourse (exh. TR, p. 337).

Defense counsel put on a spirited defense.  The investigator who responded to the January 1990 report confirmed that Tammy Sue denied any sexual abuse, and further confirmed that Chad said he had protected her.  Deborah Carpenter, a friend of Cindy's in Wisconsin, testified that Cindy told her about the sexual abuse of Marijane but said nothing about Tammy Sue (exh. TR, p. 388-398).  A psychologist testified in general that given the length and consistency of the defendant's alleged abuse, Tammy Sue did not react as a typical abuse victim would (exh. TR, p. 403).  Linda Wolke, Cindy's sister, testified that after learning of the abuse of Marijane, she asked Tammy Sue if she had been abused, and Tammy Sue denied it (exhs. TR, p. 553; WD, 2560-2568).  However, as will be discussed in more detail below, her testimony on this point was somewhat equivocal.

Prior to trial defense counsel filed a motion to compel, asserting that the state had not produced a copy of the medical examination supposedly done on the victim.  At a hearing on the motion, and in later discussions, the prosecutor made the following representations to the court:

1.  "I have talked to Mark Matassa of the local HRS office and we also took his deposition, and he brought with him, it's my understanding, everything that he could find that they had, so I believe that's been disclosed to the defense."  (Exh. MH, pp. 739-740).

2.  "[D]uring Corporal Barrow's testimony . . . he did not have a copy in his file."  (Exh. MH, p. 739).

3.  "I don't think there is anything else."  (*Id.*).

4.      "Your Honor, for the record I don't have a copy of the examination at all."  (Exh. TR, p. 54).

5.      "Judge, to be clear for the record, I have never seen a record [of the examination].  The child's mother and child do not know what the results were. . . . So I want the record to reflect that the State does not have the report nor does Investigator Barrow from his testimony at the deposition nor the mother of the child.  And it is not that we withheld it but I don't know what the report said.  I never received a copy of it."  (Exh. TR, pp. 56-57).

The court denied the motion to compel, and suggested that if defense counsel wanted it he should subpoena it (exh. MH, p. 740).

On February 11, 1993, five days before the trial commenced, defendant wrote to the trial judge asking for a different lawyer (Exh. L, pp. 108-115).  He claimed that counsel and the prosecutor were in league to suppress critical evidence, particularly the report of Tammy Sue's medical examination, the testimony of Linda Wolke, and the testimony of Tammy Sue's boyfriend, with whom she had sexual relations after the family left Florida.  The morning of trial, but before jury selection, the court considered the matter.  Defense counsel stated that he had consulted with the defendant and thought he had defendant's concurrence, but that defendant would speak for himself.  The court then asked defendant whether he had changed his mind since writing the letter, and defendant responded "We spoke last night about it.  And with his decision I'll go along with it, yes."  (Exh. JR. p. 167).  He then told the court that  he was ready to proceed to trial, and that the "concerns raised in [his] letter had basically been - - - resolved between [defendant] and [defense counsel]."  (*Id*.).  A major thrust of the defendant's argument in this court concerns the purported report of the medical examination and the testimony of Linda Wolke.  The facts surrounding these issues will be discussed in more detail below.

## C.      STANDARD OF REVIEW FOR SECTION 2254 PETITIONS

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States.  As the instant petition was filed after April

24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Pub.L. 104-132, § 104, 110 Stat. 1214, 1218-19. In relevant part, section 2254(d) now provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).  The appropriate test was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied - the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

120 S.Ct. at 1523 (O'Connor, J., concurring).  Under the test just described a habeas court does not examine the state court's ruling to see if it is correct, but examines

it only to see if it is reasonable.  More recently, in *Lockyer v. Andrade*, 538 U.S. 63, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003), the Supreme Court instructed that, on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal state court proceeding, the federal court should first ascertain the "clearly established Federal law," namely:  "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision."  *Id.*, 123 S.Ct. 1172.   The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case."  *Neelley v.* Nagle, 138 F.3d 917, 923 (11th Cir. 1998).

Next, the court must determine whether the state court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'" *Lockyer,* 123 S.Ct. at 1173 (quoting *Williams v. Taylor*, 529 U.S. at 405-06, 120 S.Ct. at 1519-20).  If the state court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim.  If on the other hand, the state court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the state court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases.  The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable."  *Williams,* 529 U.S. at 409, 120 S.Ct. at 1521.  The state court's incorrect or erroneous application of clearly established law will be held to be reasonable and not warrant a writ so long as the state court adjudication results in a "satisfactory conclusion."  *Id.* 529 U.S. at 410-12, 120 S.Ct. at 1522-23.

Only if the federal habeas court finds the state court decision to be contrary to, or an unreasonable application of, clearly established Supreme Court law does

it take the final step of conducting an independent review of the merits of the petitioner's claims.   *Neelley*, 138 F.3d 917.  Even so, the writ still will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States."  28 U.S.C. § 2254(a).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in state court where that adjudication  "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  The Supreme Court has clarified that:  "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding."  *Miller-El v. Cockrell*, 537 U.S. 322, 123 S.Ct. 1029, 1041, 154 L.Ed.2d 931 (2003) (dictum).  When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); *see also Crawford v. Head*, 311 F.3d 1288 (11th Cir. 2002) (explaining that the new statute provides for a "highly deferential standard of review" for factual determinations made by a state court); *Jackson*, 112 F.3d at 824-25 (noting that the new statute places a heavier burden on petitioner to overcome the presumption of factual correctness).

D.   **PETITIONER'S GROUNDS FOR RELIEF**

1.   **Ineffective assistance of trial counsel**

Petitioner raises numerous grounds in support of his ineffective assistance claim.  Respondent concedes that all but one of the asserted grounds were exhausted in state court, but contends petitioner is not entitled to habeas relief on any of them.

A. **Clearly Established Federal Law**

To show a violation of his constitutional right to counsel, defendant must demonstrate both that counsel's performance was below an objective and

reasonable professional norm and that he was prejudiced by this inadequacy. *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 2064, 80 L.Ed.2d (1984); *Williams v. Taylor*, 529 U.S. 362, 390, 120 S.Ct. 1495, 1511, 146 L.Ed.2d 389 (2000). In applying *Strickland*, the court may dispose of an ineffective assistance claim if defendant fails to carry his burden on either of the two prongs. 466 U.S. at 697, 104 S.Ct. at 2069.

In determining whether counsel's conduct was deficient, this court must, with much deference, consider "whether counsel's assistance was reasonable considering all the circumstances." *Id.* at 688, 104 S.Ct. at 2065; *see Atkins v. Singletary*, 965 F.2d 952 (11th Cir. 1992). "[R]eviewing courts must indulge a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance." *Yordan v. Dugger*, 909 F.2d 474, 477 (11th Cir. 1990) (citing *Harich v. Dugger*, 844 F.2d 1464, 1469 (11th Cir. 1988); *Chandler v. United States,* 218 F.3d 1305, 1314 (11th Cir. 2000); *Lancaster v. Newsome*, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation")). Counsel's performance must be evaluated with a high degree of deference and without the distorting effects of hindsight. *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065.

With regard to the prejudice requirement, defendant must establish that, but for counsel's deficient performance, the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068. For the court to focus merely on "outcome determination," however, is insufficient; "[t]o set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him." *Lockhart v. Fretwell*, 506 U.S. 364, 369-70, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). Defendant therefore must establish "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Lockhart*, 506 U.S. at 369 (quoting *Strickland*, 466 U.S. at 687). To establish ineffective assistance, defendant must provide factual support for his contentions regarding counsel's performance. *Smith v. White*, 815 F.2d 1401, 1406-07 (11th Cir.),

*cert. denied*, 484 U.S. 863, 108 S.Ct. 181, 98 L.Ed.2d 133 (1987).  Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the *Strickland* test. *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991); *Stano v. Dugger*, 901 F.2d 898, 899 (11th Cir. 1990) (citing *Blackledge*, 431 U.S. at 74, 97 S.Ct. at 1629).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail . . . are few and far between."  *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000).  This is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether some reasonable lawyer could have acted in the circumstances as defense counsel acted. *Williamson v. Moore*, 221 F.3d 1177, 1180 (11th Cir. 2000), *cert. denied*, 122 S.Ct. 234 (2001).

_____B.  Federal Review of State Court Decision

　　　　　i.　　<u>Failure to file motion for new trial</u> (Ground 1 of Amended Petition)

For his first ground for relief petitioner contends that his trial counsel was ineffective for failure to file a motion for new trial.  He reasons that by failing to do so, counsel effectively waived petitioner's right to seek judicial review of a claim that the jury verdict was contrary to the manifest weight of the evidence.

This issue was presented to the trial court in a Fla.R.Crim.P. 3.850 motion for post conviction relief.  No evidentiary hearing was held.  The trial judge, who had presided over the trial, reviewed the record and made the following findings:

> This court presided over the Defendant's trial and has reviewed the record.  I was and am "able and qualified to evaluate the evidence and credibility of the witnesses."  *Kelley v. State,* 637 So.2d 972, 976 (Fla. 1st DCA 1994).  If defense counsel had filed a motion for new trial upon the grounds asserted in the Defendant's post-conviction (sic), that motion would have been denied without hearing.  The manifest weight of the evidence in this case clearly supports the jury verdict.  There is no basis, either express or implied, that the jury had been deceived as to the force and credibility of the evidence or had been influenced by considerations outside the record. *State v, Harris*, 660 So.2d 285, 286 (Fla, 5th DCA

> 1995).  In light of the evidence presented at trial and applicable law,
> Claim One must be denied.

(Exh. Q, pp. 496-497).  Thus, without finding whether counsel's performance was deficient, the trial court held that petitioner could not show prejudice.

At the state court level and here, petitioner essentially argues that prejudice should be presumed in this case.  However, he provides the court with no United States Supreme Court case applying the presumed prejudice standard where counsel failed to request judicial review of evidentiary weight.  Instead, he relies primarily on two state cases, *Robinson v. State*, 462 So.2d 471 (Fla. 1st DCA 1984) and *State v. Bodden*, 756 So.2d 1111 (Fla. 3rd DCA 2000).  In *Robinson* the court determined that "in criminal cases where the evidence of guilt is tenuous," defense counsel's obligation to timely file a motion for new trial based on the weight of the evidence is "substantially analogous, if not equal, to defense counsel's obligation to file a notice of appeal in order to preserve a defendant's right to appellate review." *Robinson*, 462 So.2d at 477.  The court opined that just as a failure to file a timely notice of appeal is *per se* ineffective assistance because a defendant is deprived of his right to appellate review, a failure to file a timely motion for new trial which results in the loss of all judicial review of evidentiary weight should likewise constitute ineffective assistance of counsel.  *Id.* (citing *State v. Meyer*, 430 So.2d 440 (Fla. 1983)).  The First DCA later clarified that *Robinson* did not "establish[ ] a *per se* rule of entitlement to relief for ineffective assistance of counsel without regard to the underlying facts involved in the case."  *Williams v. State*, 553 So.2d 309 (Fla. 1st DCA 1989); *see also State v. Bodden*, 756 So.2d 1111, 1113-14 (Fla. 3rd DCA 2000) (concluding defense counsel had been constitutionally ineffective for failing to file a motion for new trial on the ground that the jury verdict was contrary to the weight of the evidence, but doing so only after finding that the defendant had established prejudice under the second prong of *Strickland*); *Manley v. State*, 605 So.2d 1327 (Fla. 2nd DCA 1992) (affirming denial of relief on ineffective assistance claim based on attorney's allegedly ineffective failure to file timely motion for new trial; such failure does not *per se* entitle defendant to relief without regard to underlying facts

of case, and defendant failed to show it was likely a new trial would have been ordered).

The undersigned rejects the *per se* rule urged by petitioner.  In *United States v. Cronic*, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984), the Supreme Court laid out instances when prejudice might be presumed, and limited the instances to where there is "complete denial of counsel," no "meaningful adversarial testing," or where "the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate without inquiry into the actual conduct of the trial."  *Cronic*, 466 U.S. at 659-60, 104 S.Ct. at 2047, 80 L.Ed.2d at 668.  In *Roe v. Flores-Ortega*, 528 U.S. 470, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000), the Supreme Court held that the defendant was constitutionally deprived of counsel when his counsel failed to file a notice of appeal.  *Id.*, 528 U.S. at 477, 120 S.Ct. at 1034-35.  The Supreme Court decided that the failure to file a notice of appeal was more than a denial of counsel at a critical stage in the trial; rather, it was a "more serious denial of the entire judicial proceeding itself."  *Id.* at 483, 120 S.Ct. at 1038, 145 L.Ed.2d at 999.  The Supreme Court has since reiterated that the three situations outlined in *Cronic* are the few times where prejudice may be presumed rather than proven. *See Bell v. Cone*, 535 U.S. 685, 695-96, 122 S.Ct. 1843, 1850-51, 152 L.Ed.2d 914, 927 (2002).

Petitioner in the instant case argues that, because he did not receive judicial review of the weight of the evidence, he was deprived of, or forfeited, an entire judicial proceeding.  In *Young v. Walls*, 311 F.3d 846 (7th Cir. 2002), the Seventh Circuit considered a case that is not materially different from this one.  There, petitioner Young raised an ineffective assistance claim based on counsel's failure to request a fitness hearing during trial.  In his federal habeas petition, Young requested that the district court presume prejudice.  Relying on *Flores-Ortega*, Young likened an appeal to a fitness hearing and argued that, because he did not receive a fitness hearing during trial, he experienced a forfeiture of a judicial proceeding.  The district court "[was] not persuaded that *Flores-Ortega* demands a

presumption of prejudice," and declined to extend the application of the presumed prejudice standard. *United States ex rel. Young v. Snider*, 2001 WL 1298704, at *8 (N.D. Ill. 2001), *aff'd*, *Young v. Walls*, 311 F.3d 846 (7th Cir. 2002). The Seventh Circuit affirmed, concluding that the Court in *Bell* had rejected the approach urged by petitioner. *Young v. Walls*, 311 F.3d at 848.

Turning to the instant case, the undersigned is not persuaded that Supreme Court precedent demands a presumption of prejudice in this case. The *Bell* Court rejected the approach of treating specific attorney errors (*e.g.*, a decision not to file a particular motion, a decision not to put on mitigating evidence at sentencing, a decision to waive closing argument), as equivalent to abandonment. *Bell*, 535 U.S. at 985-98, 122 S.Ct. at 1850-51. Further, this petitioner was not deprived of counsel at any critical stage of the proceedings; nor does he fall into any of the other limited circumstances in which prejudice might be presumed. Accordingly, it was neither contrary to, nor an unreasonable application of Supreme Court precedent for the state court to decline to extend the application of the presumed prejudice standard, and to require petitioner to show that "there is a reasonable probability that, but for [his] counsel's [allegedly] unprofessional errors, the result of the proceeding would have been different." *See Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698.

Petitioner cannot show prejudice because the structure of Florida's rules mandates his lack of success. In Florida, a court "shall" grant a new trial if (1) the verdict was determined by lot, (2) the verdict was contrary to the law or the weight of the evidence, or (3) there is new and material evidence which would have changed the outcome. Fla. R. Crim. P. 3.600(a). Thus, where there is a colorable claim that the verdict, although technically sufficient to support a conviction, was against the manifest weight of the evidence, a motion for new trial is appropriate. Moreover, and critical to the analysis of this case, a motion for new trial is the <u>only</u> vehicle by which a defendant can have the weight of the evidence tested.

"The [Florida] Supreme Court has made it abundantly clear that the only avenue for judicial review of the weight of the evidence is by motion for new trial at the trial court level." *Robinson v. State*, 462 So.2d 471, 476 (Fla. 1st DCA 1984). In *Tibbs v. State*, 397 So.2d 1120 (Fla. 1981) the Florida Supreme Court held that weight of the evidence claims, as opposed to sufficiency of the evidence claims, must be determined by the trial court, and that appellate courts lack jurisdiction to reverse a conviction on weight of the evidence claims. The court explained that sufficiency of the evidence goes to whether the state produced sufficient evidence to support a conviction. If the state has failed to do so, an appellate court can reverse. On the other hand, weight of the evidence claims go to evidence which, although legally sufficient to support a conviction, is manifestly contrary to a finding of guilt such as to allow the trial judge to overturn a jury verdict and order a new trial. An appellate court "ha[s] no authority to reverse [a defendant's] conviction on the ground that the verdict is contrary to the *weight* of the evidence." *Robinson v. State*, 462 So.2d at 476 (emphasis in original).

Thus, only the trial judge can grant or deny this petitioner a new trial on weight of the evidence grounds. And the trial judge who presided over this case, who heard the evidence, and who was in a position to evaluate the credibility of the witnesses and the weight of their testimony in the totality of the trial, found on the record that he would not have granted a motion for new trial if such a motion had been made. This finding is well supported by the record. Moreover, the only logical conclusion that can be drawn from this finding is that if this court were to grant defendant relief and mandate a late-filed motion for new trial, he would make the same finding again.[4]  Thus, regardless of whether counsel's performance was

---

[4]  Petitioner contends that given the chance he could now come up with new and better arguments, and that he should be allowed to try, but that assertion fails on its face. He says that he can point to record evidence of perjured testimony, meaning that he can emphasize contradictions in the testimony of various prosecution witnesses. However, a new argument is not the same as new evidence or a new legal theory. The trial court has ruled, and all petitioner does here is once again point out the many discrepancies in the state's witnesses' testimony. None of defendant's new arguments are not so compelling as to force a finding that there is any likelihood that the trial judge would be swayed by them.

deficient under federal constitutional law when he failed to move for a new trial, a determination this court does not make, this court cannot say the state court contradicted the Supreme Court of the United States or applied constitutional law unreasonably to the facts of this case when it concluded that petitioner failed to meet the prejudice prong of *Strickland*.

To the extent petitioner contends counsel's error denied him appellate review of the weight of the evidence issue, again, he fails to establish prejudice.[5] Given the trial court's finding that it would have denied relief, and the limits on appellate review of a trial court's order granting or denying a motion for new trial,[6] there is no reasonable probability that appellate review of the issue would have changed the outcome of petitioner's criminal proceeding.

ii.   **Failure to request a *Nelson*[7] hearing** (Ground 2 of Amended Petition)

Petitioner next claims that his counsel was ineffective for not insisting on a hearing concerning a dispute between them.  Respondent here contends that this is purely a matter of state law, because *Nelson* is a state procedure for determining whether a defendant is entitled to new appointed counsel.  As respondent points out, federal habeas relief is not available to reexamine state decisions on its own procedural rules, *Estelle v. McGuire*, 502 U.S. 62, 112 S.Ct. 475, 116 L.Ed.2d 385

---

[5]  Again, prejudice would not be presumed in these circumstances, as petitioner was not deprived of an appeal altogether, only the right to raise a single issue on appeal.  The record establishes that petitioner had a full appeal with the assistance of a lawyer, in which he raised grounds for reversal.  So he was not denied an entire judicial proceeding.  *See United States v. Kitchen*, 277 F.3d 1014 (7th Cir. 2000) (rejecting argument that *Flores-Ortega* controlled and declining to presume prejudice where counsel failed to appeal trial court's denial of motion for new trial; attorney's alleged error had not deprived defendant of an appellate proceeding altogether--defendant had a full appeal with the assistance of a lawyer, and had only lost the right to raise a single issue on appeal).

[6]  For a reviewing court to overturn a trial court's granting or denial of a motion for new trial, there must be a clear showing that the trial court abused its broad discretion.  *Stephens v. State*, 787 So.2d 747, 754 (Fla. 2001) (explaining that "[i]n order to demonstrate abuse, the nonprevailing party must establish that no reasonable person would take the view adopted by the trial court.").

[7]  *Nelson v. State*, 274 So.2d 256 (Fla. 4th DCA 1973).

(1991), but that is not the issue here.  Petitioner does not argue that the court erred, but that his counsel was ineffective for denying him the opportunity to seek a meaningful decision on whether he was entitled to different counsel. *See Van Poyck v. Florida Department of Corrections*, 290 F.3d 1318, 1327 n. 10 (11th Cir. 2002) (noting that while the underlying issue may be a state matter, the real issue is whether counsel was ineffective in failing to assert a valid state law claim).  Thus, a federal constitutional claim has been presented.

Petitioner raised this claim in his motion for post-conviction relief.  In a written order the trial judge denied relief without a hearing, referring to the record (exh. Q, pp. 497-498).  He found that before trial petitioner wrote the trial judge a letter in which he expressed dissatisfaction with his lawyer.  Before the trial commenced, and in open court but without the jury present, the court asked counsel and petitioner to state their positions on the record.  Counsel indicated that he and petitioner had resolved their differences.  Petitioner agreed, and the court found on the record that petitioner was prepared to proceed to trial with his counsel.  During trial petitioner asked the court to give him a new lawyer because counsel had failed to present the testimony of a witness.  That witness' testimony was then made part of the record, and petitioner indicated that he wished to proceed with his counsel (exh. Q, pp. 497-498).

Petitioner is not entitled to relief on this claim.  First, petitioner cannot show deficient performance by counsel because he cannot show that counsel had any duty to ask for a *Nelson* hearing.  Indeed, *Nelson* held that "where a *defendant*, before the commencement of a trial, makes it appear to the trial judge that *he* desires to discharge his appointed counsel, the trial judge . . . should make an inquiry." 274 So.2d at 258 (emphasis added).  Petitioner has presented no authority for his proposition that *counsel* somehow had the duty to initiate a *Nelson* hearing, nor has the court found any.  Second, the Rule 3.850 court pointed to the record, and showed that although petitioner twice expressed dissatisfaction with his attorney, he twice recanted and indicated that he was prepared to proceed.  These findings are clearly

supported by the record (exh. L, p. 108; exh. JR, p. 2-3).  Petitioner therefore cannot show that he was prejudiced by his attorney's failure to request a *Nelson* hearing. Indeed, although petitioner styles this ground as one involving ineffective assistance of counsel, his entire argument faults the trial court for not holding a hearing.  He therefore fails to show ineffective assistance of counsel.

Moreover, this court will not consider whether the trial court erred in not conducting a *Nelson* hearing (as opposed to whether counsel was ineffective for not seeking one).  That issue was raised and resolved on appeal - on state law grounds. "Mere errors of state law are not the concern of this court . . . unless they rise for some other reason to the level of a denial of rights protected by the United States Constitution."  *Barclay v. Florida*, 463 U.S. 939, 958-659, 103 S.Ct. 3418, 3429, 77 L.Ed.2d 1134 (1983) (citations omitted).  Federal habeas relief is available to correct only constitutional injury.  28 U. S. C. § 2254(a); *Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S.Ct. 475, 479-80, 116 L.Ed.2d 385 (1991) (errors that do not infringe upon a defendant's constitutional rights provide no basis for federal habeas corpus relief); *Wainwright v. Goode*, 464 U.S. 78, 104 S.Ct. 378, 78 L.Ed.2d 187 (1983); *Engle v. Isaac*, 456 U.S. 107, 102 S.Ct. 2976, 73 L.Ed.2d 1361 (1981); *Carrizales v. Wainwright*, 699 F.2d 1053 (11th Cir. 1983).  The Supreme Court "ha[s] defined the category of infractions that violate 'fundamental fairness' very narrowly."  *Estelle*, 502 U.S. at 352, 110 S.Ct. 668.  State law issues may be reviewed in this federal forum only when the alleged errors were "so critical or important to the outcome of the trial to render the entire trial fundamentally unfair."  *Tejada v. Dugger,* 941 F.2d 1551, 1560 (11th Cir. 1991). "This limitation on federal habeas review is of equal force when a petition, which actually involves state law issues, is couched in terms of equal protection and due process."  *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988).  In the instant case, the trial record as set forth above demonstrates that petitioner's trial was not rendered fundamentally unfair by the trial court's handling of petitioner's complaints about counsel.  Thus, petitioner is not entitled to relief on this ground.

### iii. Failure to request a *Richardson*[8] hearing (Ground 3 of Amended Petition)

Petitioner next contends that counsel should have requested a *Richardson* hearing because of the state's *Brady* violation in refusing to turn over the medical examination report, which contained exculpatory material. Petitioner raised this claim in his motion for post-conviction relief, and the trial court denied relief without a hearing. It held that a *Richardson* hearing is appropriate when defense counsel has reason to believe that the state has not provided all required discovery. However, it was established before trial that the prosecution did not have a copy of the examination report, so a hearing would not have been appropriate (exh. Q., pp. 498-500).

The state court did not contradict the Supreme Court of the United States or unreasonably apply the Court's precedent. The state's attorney represented to the court that she did not have a copy of the report and did not know who did. The court accepted this both at the time of the hearing and upon review of petitioner's motion for post-conviction relief. Since there would have been nothing to dispute at any such hearing, counsel's performance was not deficient. Moreover, petitioner has shown this court absolutely nothing to refute the state's representation. He refers to a "phantom report," and that may very well be what it is. What petitioner has not shown is whether, at the time of the trial or during pre-trial proceedings, (1) a copy of such report actually existed, and (2) the state had control over a copy. Without such proof, petitioner cannot show that he was prejudiced. This entire issue is an exercise in speculation, and petitioner is not entitled to relief.

### iv. Failure to subpoena medical examination records (Ground 4 of Amended Petition)

Petitioner next contends that counsel was ineffective in failing to subpoena the medical examination report. He raised this in his motion for post-conviction relief. The trial judge held an evidentiary hearing on this issue, but then recused

---

[8] *Richardson v. State*, 246 So.2d 771 (Fla. 1971).

himself.  A new judge reviewed the record and found as fact that counsel had filed his original motion to compel because petitioner insisted that the medical report would contain exculpatory material, but that when the state announced that it did not intend to introduce the report in evidence, he decided not to pursue it because (1) the examination would not show anything one way or the other since Tammy was examined long after the abuse had ceased and in the meantime had sexual relations with her boyfriend, and (2) in that case the report would state that its finding was neither consistent nor inconsistent with abuse taking place.  Counsel therefore believed that it would be advantageous not to use the report, because he could then argue that if the state had any evidence to back up the testimony of its witnesses, it surely would have produced it, and counsel did make that argument to the jury. The court therefore held that counsel's decision was an informed and reasonable tactical decision under the circumstances, and was not deficient performance.  The court also held that petitioner had not proven that the examination report actually existed or that it contained exculpatory material, so he could not show prejudice even if counsel's performance was deficient.  (Exh. Q, pp. 1805-06.)

_____The factual findings made in the trial court are entitled to a presumption of correctness. 28 U.S.C. § 2254(e)(1).  Petitioner has failed to rebut this presumption by clear and convincing evidence.  The court has reviewed the transcripts of the hearings held in this case, along with the entire trial transcript.  Beyond arguing that all the witnesses who testified against him were liars, and pointing to instances of contradictory testimony, all of which arguments were rejected by the jury, petitioner offers nothing more than supposition about what the medical report would say if one existed.

The trial court's conclusion that counsel's tactical decision was reasonable was neither contrary to, nor an unreasonable application of, the *Strickland* standard. Moreover, petitioner cannot show that he was prejudiced by counsel's failure to subpoena a document that has not been proven even to exist.

_____     v.     <u>Failure to impeach prosecution witnesses</u> (Ground 5 of Amended Petition)

Petitioner next contends that defense counsel could have more effectively impeached the prosecution's primary witness, Tammy Sue.  He raised this claim in his motion for post-conviction relief, and the trial court denied relief without a hearing.  It found that defense counsel presented testimony from defense witnesses, introduced deposition testimony in lieu of live testimony, and cross-examined prosecution witnesses in an effort to expose contradictions in the victim's testimony.  The court found that counsel had effectively shown contradictions in the victim's testimony, and that applying the strong presumption required by *Strickland*, petitioner had failed to show deficient performance.  It also found that petitioner's argument that counsel is required to conduct a particular approach is legally insufficient.

Here petitioner repeats the arguments he made in the state court.  In essence he contends that there was documentary evidence that would prove that both the victim and her mother were untruthful.  He relies in *Nixon v. Newsome*, 888 F.2d 112 (11th Cir. 1989).  In *Nixon* two men, Zolun and Nixon were involved in a fracas that caused the shooting death of Tom Billings.  The only eye witness was Billings' wife, Kathy.  At Zolun's trial Kathy testified that Zolun killed her husband, and that she did not see Nixon with a gun.  At Nixon's subsequent trial Kathy testified that Nixon shot her husband and that both Nixon and Zolun were firing guns.  Nixon's defense counsel asked Kathy whether she had testified differently at Zolun's trial, and she denied it.  Counsel did not use Kathy's prior directly contradictory trial testimony to impeach her.  The Eleventh Circuit found that it had "no difficulty concluding that the attorney's actions were not withing the wide range of professional competence.  These facts, petitioner contends, fit neatly into the facts of this case, and the same result should obtain.

He relies on two instances in which the victim said that petitioner had done nothing to her: statements to an HRS investigator and to her Aunt Linda Wolke.  Had these facts been shown to the jury, he says, the outcome would have been different.

### The HRS Investigator.

Petitioner's argument fails on this part of his claim because the HRS investigator, Pamela East, was produced as a defense witness, and testified unequivocally that on January 3, 1990, after the abuse had ceased and shortly before Cindy took her family to Wisconsin, she asked Tammy Sue if petitioner had molested her, and Tammy Sue denied it, stating that her brother Chad had protected her. (Exh. TR, pp. 437 - 441). Petitioner says that this type of impeachment, what he calls second person impeachment, is not as effective a first person impeachment. Petitioner does not explain what he means by this, nor does he explain how this argument fits his *Nixon* analogy. Pamela East West testified that Tammy Sue denied any sexual abuse. She never testified differently. Her testimony directly contradicted Tammy Sue's subsequent claim that petitioner had molested her. The court cannot discern how Pamela East's testimony could have been handled more effectively.

### Linda Wolke

In a pre-trial deposition taken by telephone on November 30, 1992, Linda Wolke testified that Tammy Sue had come to live with her in December 1991. When asked, she said that "[Tammy Sue] had told me Chad had always tried to defend her so [petitioner] had never really gotten to her but she had always feared he would." (Exh. WH, p. 2579). Then:

> Q   (by prosecutor) So her statement to you is that Mr. Jewson never touched her in any way?
>
> A   That she would tell me about.
>
> Q   I'm sorry.  What did you just say?
>
> A   That she would tell me about.  I don't know if he did but she wasn't willing to say yes or no specifically.
>
> Q   So she – she didn't tell you he never touched her, she just wouldn't tell you if he did it?
>
> A   Right.

Q   Did she give you a reason why she wouldn't discuss it?

A   She just said she was too ashamed of the whole situation.

     *   *   *

Q   (by defense counsel) Okay.  Now you say that you were talking with Tammy, and Tammy said that she was afraid that he was going to do something to her but never did.

A   Yes.

Q   And the Chad told you that he had always protected her from Mr. Jewson?

A   He said he tried to protect her as best he could, and apparently did a very good job.

Q   So he was indicating than that Mr. Jewson had never done anything to her?

A   I'm sorry, if he had known, no.  As far as he had known, no.

     *   *   *

Q   So this was even in 1991 they said that nothing had happened to Tammy?

A   That she was willing to admit or that Chad was aware of.

Q   Well, but she came out and said that he had never done anything to her, right?

A   That she was willing to admit to me.

Q   Well, she did not make the statement to you, though, that he had never done anything to her, that she was just afraid that he would?

Q   To me, yes.

(*Id*. at 2579-2586).  Linda Wolke, who lived in Wisconsin, did not testify live at trial. Defense counsel tried to introduce her deposition into evidence by reading it to the jury, but the court ruled it inadmissible.  However, the court allowed counsel to take another telephone deposition during a lunch break.  That deposition was read to the jury (Exh. TR, p. 553).  Petitioner asserts that only portions of the deposition were read.  Unfortunately, the only entry in the record states "(Deposition of Linda A

Wolke read)," but this is a clear indication that the entire deposition was read. Moreover, the trial judge instructed the jury on the meaning and import of deposition testimony, and told the jurors "we have the sworn testimony of a Linda Sue (sic) Wolke . . .  and that it going to be read to you now.  [The deputy clerk] is going to read Mrs. Wolke's responses to questions asked by [the prosecutor] and [defense counsel]." (*Id.*).  Other than petitioner's bald assertion that only portions of the second deposition were read to the jury, there is nothing to support that part of his claim.  The foregoing quoted language from the trial clearly suggests that the entire deposition was read.

Petitioner also states that the second deposition transcript is not in the record, but that is incorrect.  See exh. WD, pp. 2553-2569.  The testimony in that deposition was not substantially different from the first:

> Q   (by defense counsel) Well, did you ever discuss whether or not [Tammy Sue] had been sexually abused by Mr. Jewson?  Did you ever have a discussion like that with her?
>
> A   I tried to.  I had told her I would get her counseling if she thought she needed it.
>
> Q   She declined that?
>
> A   She didn't want to talk about it.  She basically said no, just leave it go.
>
> Q   So she didn't went to go to counseling?
>
> A   No.
>
> Q   You had, in fact, discussed with her, had you not, or inquired of her as to whether or not anything had happened to her, and did she not tell you that nothing had happened because Chad had always protected her?
>
> A   Yes.
>
> Q   She told you that?
>
> A   Yes.
>
> *   *   *

**Q   Yeah, but she did tell you that nothing had happened to her because she had protection?**

**A   Right.**

\*   \*   \*

**Q   (by the prosecutor) Tammy Sue didn't tell you that the allegations about what the defendant had done were not true, did she?  She just wouldn't tell you what if anything he had done?**

**A   Correct.**

\*   \*   \*

**Q   (by defense counsel) [The prosecutor] asked you, or ran the question to you, saying that Tammy Sue just didn't want to talk about this, and the answer to that was correct; right?**

**A   Yes.**

**Q   Well, she did, though, tell you that nothing had happened to her because Chad had protected her; right?**

**A   Yes.**

**Q   Okay.  She did tell you that?**

**A   Yes.**

**(Exh. WD, pp. 2560-2568).**

Petitioner's argument is not convincing.  Whether Linda Wolke had testified by her first deposition, in person, or live, it is abundantly obvious that her testimony was equivocal.  It is easy, as petitioner has done, to pick out only those parts of the first deposition that categorically were helpful to petitioner, but the court will not overlook the balance of the testimony.  In fact, when compared, the second deposition, the one actually read to the jury, was on balance *more* favorable to the petitioner than the first, because Ms. Wolke did not equivocate as much as she had before.  The prosecutor put only one question to her about Tammy Sue not wanting to talk about the petitioner, and counsel did a good job of downplaying even that.

Moreover, Ms. Wolke testified in both depositions that she "hated" the defendant because she believed he had sexually abused his own daughter, and counsel represented to the court that in spite of his repeated attempts to contact her before trial, she did not return his telephone calls, and he was convinced that she would be a hostile witness.  The record supports this conclusion.

In the end, of the three ways that Ms. Wolke's testimony could have been presented to the jury, it is obvious that the way it actually was presented, by the second deposition, was the most helpful and the least harmful to petitioner's case. And the discrepancies in the testimony of the various witnesses was nothing so definite as in *Nixon*, where the witness testified under oath in two separate trials alternatively that the man on trial had murdered her husband while the man not on trial had not.  Counsel in this case had a lot of conflicting testimony to work with, and he worked it well.

Finally, the court must note a fundamental flaw in petitioner's argument on this testimony.  Assuming that the victim told the HRS investigator, her mother, and her Aunt, her sister, and her brother, unequivocally and without question, that the petitioner had never, ever, touched her, and assuming further that all five of them had told the jury as much, the jury was still not required to disbelieve the victim's later accusations.  A child who has been repeatedly sexually molested by her step-father over a period of six or seven years is undoubtedly not going to be particularly willing to talk about it.  Indeed the victim testified that she was so ashamed that she did not want to talk about it.  The jury heard from Marijane and from Tammy Jewson, petitioner's own daughter, that he had done the same thing to them under similar circumstances.  There was plenty of evidence of petitioner's guilt, regardless of how many times the victim may have changed her story.

Thus, counsel's performance in impeaching the victim's testimony was not deficient, and even if it were, petitioner has not shown that the outcome would have been different had counsel done as he claims should have been done.  The trial

court's decision was not contrary to, or an unreasonable application of, clearly established Supreme Court law, and petitioner is not entitled to relief on this ground.

      vi.   <u>Failure to communicate plea offer</u> (Ground 6 of Amended Petition)

      Petitioner blames his counsel for failing to initiate plea bargaining and failing to communicate a plea offer.  This claim was presented to the state court in petitioner's motion for post-conviction relief.  The trial court held an evidentiary hearing and determined that (1) defense counsel made preliminary inquiries of the state, but (2) defense counsel was hesitant even to broach the subject of a possible plea because the petitioner adamantly maintained his innocence, had already asked the court to replace his earlier counsel, and had made accusations against his current counsel that he was not vigorously pursuing a defense.  The court held that under these circumstances counsel's performance was not deficient.  The court further held that petitioner could not prove prejudice because the evidence showed that the state had made no plea offers or exhibited any inclination to plea bargain. (Exh. Q, pp. 1806-1807).

      "[T]here is no constitutional right to a plea bargain."  *Weatherford v. Bursey*, 429 U.S. 545, 562, 97 S.Ct. 837, 846, 51 L.Ed.2d 30 (1977).  If petitioner is attempting to argue that counsel was ineffective due to his failure to pursue a plea bargain, he must show that the prosecutor would have offered a plea, that the court would have approved it, and that he would have accepted it.  *McClenithan v. Dugger*, 767 F.Supp. 257, 258 (M.D. Fla. 1991) (citing *Zamora v. Wainwright*, 610 F.Supp. 159, 161 (S.D. Fla. 1985); *Zamora v. Wainwright*, 637 F.Supp. 439, 443 (S.D. Fla. 1986).  Petitioner must come forth with objective evidence to show that but for his counsel's errors he would have accepted a plea offer.  *Diaz v. United States*, 930 F.2d 832, 835 (11th Cir. 1991); *Toro v. Fairman*, 940 F.2d 1065, 1068 (7th Cir. 1991).  Even under Florida's criminal rules counsel is not required to engage in plea negotiations.  See Fla. R. Crim. P. 3.171(c)(2) (Counsel must convey any offer made by the prosecution, and advise the defendant on possible alternatives.).  Here the trial court's factual determination that the state made no offer is dispositive.  Counsel could not

communicate to petitioner an offer that did not exist, nor could be force the state to plea bargain.  Petitioner is not entitled to relief on this ground.

### vii.   Failure to object to prosecutorial misconduct (Ground 7 of Amended Petition

Petitioner next argues that his counsel was ineffective for failing to object to prosecutorial misconduct.  He contends that the prosecutor deliberately misled the jury on the question of the medical examination.  The victim's mother, Cindy Schleicher, had testified at a deposition that she did not remember being told of the results of the examination.  At trial the prosecutor asked her essentially the same series of questions as had been asked at deposition, and she testified that she was told the results - that "it had been going on for a long time."[9]  (Exh. TR, p.318). Petitioner contends that the prosecution thereby introduced what she knew to be perjured testimony into the record, and then emphasized it in her final argument, all without objection to the clear misconduct.  Petitioner also asserts that the prosecutor vouched for the testimony of several witnesses, including Cindy Schleicher and Tammy Jewson, and injected her own opinions into the trial. Petitioner raised this claim in his motion for post-conviction relief, and the trial court heard testimony at the evidentiary hearing.  The court found that as a general rule counsel purposefully would not object during closing argument unless he thought the prosecutor's comments were material, and that his failure to object in this case as petitioner desired was tactical and did not constitute ineffective assistance of counsel.  The court further found that petitioner had failed to show prejudice because the remarks were not so prejudicial as to render the verdict unreliable (exh. TR, p. 1808).

It is long established Supreme Court law that prosecutors must refrain from improper methods calculated to produce a wrongful conviction; they may strike hard blows but are not at liberty to strike foul ones.  *Berger v. United States*, 295 U.S. 78,

---

[9] Defense counsel did not object to the hearsay nature of this testimony, an issue petitioner has never clearly raised.

88, 55 S.Ct. 629, 633, 74 L.Ed.2d 1314 (1935). "A lawyer shall not . . . state a personal opinion as to . . . the credibility of a witness . . . or the guilt or innocence of an accused" and shall not "use arguments calculated to inflame the passions or prejudices of the jury." *Darden v. Wainwright*, 477 U.S. 168, 181, 106 S.Ct. 2464, 2471, 91 L.Ed.2d 144 (1986) (citing Model Rules of Professional Conduct, Rule 3.4(e) (1984); Code of Professional Responsibility, DR 7-106(c)(4) (1980); ABA Standards for Criminal Justice: 3-5.8(b) (2nd Ed. 1980)).

In applying the various professional standards to the conduct of attorneys who appear before them, courts must not lose sight of the reality that "[a] criminal trial does not unfold like a play with actors following a script." *United States v. Young*, 470 U.S. 1, 10, 105 S.Ct. 1038, 1043, 84 L.Ed.2d 1 (1985) (quoting *Geders v. United States*, 425 U.S. 80, 86, 96 S.Ct. 1330, 1334, 47 L.Ed.2d 592 (1976)). "[I]n the heat of argument, counsel do occasionally make remarks that are not justified by the testimony, and which are, or may be, prejudicial to the accused." *Id.* (*citing Dunlop v. United States*, 165 U.S. 486, 498, 17 S.Ct. 375, 379, 41 L.Ed. 799 (1897)).

Challenges to allegedly improper prosecutorial comments are not infrequent. However, in evaluating a prosecutorial indiscretion:

> it is not enough that the prosecutors' remarks were undesirable or even universally condemned. The relevant question is whether the prosecutors' comments so infected the trial with unfairness as to make the resulting conviction a denial of due process.

*Darden, supra* (internal citations omitted); *Donnelly v. DeChristoforo*, 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974); *United States v. Young*, 470 U.S. 1, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985). Inappropriate prosecutorial comments, standing alone, do not justify a reviewing court to reverse a criminal conviction obtained in an otherwise fair proceeding. Instead, the remarks must be examined within the context of the trial to determine whether the prosecutor's behavior amounted to prejudicial error. *Young,* 470 U.S. at 11, 105 S.Ct. at 1044. In determining whether a prosecutor's improper comments were so egregious as to render the proceeding

fundamentally unfair, the court will consider the remedying effects, if any, of the trial court's instructions to the jury and the evidence of guilt. *Cargill v. Turpin*, 120 F.3d 1366, 1379 (11th Cir. 1997). Weight is also given to the trial judge's assessment of any prejudicial effect the comments may have had. *United States v. Simon*, 964 F.2d 1082 (11th Cir. 1992).

Here petitioner says that the prosecution injected perjured testimony into the record by having Cindy Schleicher testify that she was informed of the examination results. Of course the fact that a witness changed her testimony about something that she may have forgotten but subsequently remembered is not necessarily perjury. In fact, the record here is not so black and white as petitioner maintains. At her deposition Ms. Schleicher was asked whether she was aware of what the examination revealed, and she responded that she did not (exh. SH, pp. 2637-2638). When asked whether the doctor or nurse talked to her after the examination she responded "Very little." (Exh. SH, p. 2638). Not knowing what the "examination revealed" is not necessarily inconsistent with her being told that "it had been going on a long time." Moreover, the prosecution's representations to the court in pre-trial hearings primarily concerned the existence of the report of the examination, and she only mentioned once that the mother did not know what "the results" were. Again, this is not so definitive as to make the mother's subsequent testimony that she was told it "had been going on a long time" perjurious.

Moreover, as the trial court noted, it was defense counsel who brought up the issue of the examination to begin with. That may have been wise if the examination had shown anything definitive, but counsel also knew that the victim had engaged in consensual intercourse after the family left Florida but before her examination, so the results would be equivocal at best. The prosecutor's conduct with respect to the examination was not so egregious as to render the proceeding fundamentally unfair. In fact, this court cannot say that the prosecution's comments on the examination were improper in the first instance. After eliciting the mother's memory about the examination, the prosecutor took a different tack on closing argument. She argued

that the state should not be disadvantaged by its failure to produce the examination record because there had been no evidence that it even existed.  By arguing that there was no report, the prosecutor was actually undercutting her own witness' testimony about what the results were.  Petitioner has failed to show that counsel's performance on this issue was deficient in this regard, or that he was prejudiced.

Petitioner also contends that the prosecutor improperly stated her opinion when she told the jury that petitioner had abused his own daughter, Tammy Jewson, in Wisconsin.  The trial court found that this was a fair comment on the evidence, a finding clearly supported by the record, since that is exactly what Tammy Jewson testified to.  Again, this finding was amply supported by the record.

Petitioner further contends that the prosecutor misstated the evidence when she told the jury that Tammy Jewson, who unquestionably had a troubled past, was no longer taking medication.  In fact Ms. Jewson testified that she was taking Prozac, but that it did not have any side effects.  Petitioner seizes on this discrepancy as an outright falsehood.  The trial court considered the matter and found that while the prosecutor mischaracterized the evidence, petitioner had not shown how he was prejudiced by this.

Finally, petitioner argues that the prosecutor vouched for Tammy Jewson's credibility by stating that she had no reason to lie.  Petitioner says she had plenty of reason to lie, because she admitted that she hated him.  The trial court found that Tammy Jewson's credibility was an issue, that defense counsel presented evidence attacking that credibility, and that there had been no showing that this comment was so prejudicial as to have affected the trial.  "Even if the argument [that the witness had no reason to lie] was somehow improper, it was not so improper or prejudicial as to require a new trial."  *Rosado v. State*, 693 So.2d 633 (Fla. 5th DCA 1997).

Based on the foregoing, including the factual findings of the state court, it was not an objectively unreasonable application of the *Strickland* standard for the state court to deny relief on this ground.

viii.    <u>Failure to impeach victim's mother</u> (Ground 9 of Amended Petition)

Petitioner next faults counsel for failing to impeach the victim's mother, Cindy Schleicher.  Respondent argues that this issue was not presented to the state courts for resolution and is therefore procedurally barred.

It is a long-standing prerequisite to the filing of a federal habeas corpus petition that the petitioner have exhausted available state court remedies, presenting to the state courts for consideration each issue upon which federal review is sought. *Picard v. Connor*, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971); 28 U.S.C. § 2254(b) and (c).  "To satisfy the exhaustion requirement, the petitioner must have fairly presented the substance of his federal claim to the state courts." *Picard*, 404 U.S. at 277-78; *Anderson v. Harless*, 459 U.S. 4, 74 L. Ed. 2d 3, 103 S. Ct. 276 (1982). Consistent with the fair presentation requirement of *Picard*, "habeas petitioners generally may not raise ineffective assistance of counsel claims except on grounds specifically presented to the state courts."  *Jackson v. Herring*, 42 F.3d 1350, 1355 (11th Cir. 1995) (citing *Footman v. Singletary*, 978 F.2d 1207, 1211 (11th Cir. 1991)) (other citation omitted).

If a petitioner failed to raised an issue in the state court and under state law would be procedurally barred from doing so, the federal court will apply the state procedural default law and hold the claim to be barred.  *Tower v. Phillips*, 7 F.3d 206, 210 (11th Cir. 1993); *Parker v. Dugger,* 876 F.2d 1470 (11th Cir. 1990), *rev'd on other grounds,* 498 U.S. 308, 111 S.Ct. 731, 112 L.Ed.2d 812 (1991).  To overcome a procedural default, a petitioner must show cause and prejudice or a fundamental miscarriage of justice in order for the federal habeas court to reach the merits of a claim.  *Tower*, 7 F.3d at, 210; *Parker*, 876 F.2d 1470.  "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim."  *McCleskey v. Zant*, 499 U.S. 467, 497, 111 S. Ct. 1454, 1472, 113 L. Ed. 2d 517 (1991) (quoting *Murray v. Carrier*, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645, 91 L. Ed.

2d 397 (1986)).  Lack of counsel or ignorance of available procedures is not enough to establish cause.  *Tower v. Phillips, supra.*

Petitioner argues in his reply that this issue was indeed presented - that counsel's failure to impeach Ms. Schleicher was present in several of his other grounds, especially grounds one through five and seven.  However, the arguments to which petitioner refers are arguments made in grounds one through five and seven in *this* court, not in the state court.  Petitioner presented grounds 1-5 and 7 in his state motion for post-conviction relief.  In those grounds he made a lot of claims, and argued at some length that Cindy Schleicher's testimony was suspect.  This was particularly true, he says, when she first denied knowing the results of the medical examination and later remembered it, all as discussed above.  Nevertheless, that is not enough.  Although petitioner discussed Cindy Schleicher's testimony in a variety of contexts, nowhere did he fairly present the current argument to the state court--that his federal constitutional rights were abridged by the constitutional ineffectiveness of his counsel's failure to impeach Cindy Schleicher.  If petitioner were to now raise this instance of ineffective assistance in the Florida courts, it would be rejected on firmly established and consistently applied procedural grounds.  If brought as part of a new Rule 3.850 motion, it would be either barred by the statute of limitations, Fla.R.Crim.P. 3.850(b), or rejected as a successive motion under Fla.R.Crim.P. 3.850(f).  Petitioner offers no cause for his default, his argument notwithstanding.  Further, he cannot show - other than by arguing that the jury failed to accept the evidence as he sees it - that he is factually innocent.  The issue is therefore procedurally barred, and this court cannot consider it.  *See, e.g., Peoples v. Campbell*, 377 F.3d 1208, 1238-39 (11th Cir. 2004) (two instances of alleged ineffective assistance of counsel were barred from federal habeas review because petitioner failed to raise those two instances of ineffective assistance in the state courts, and failed to demonstrate both cause and prejudice to excuse his procedural default); *Isaacs v. Head*, 300 F.3d 1232, 1255-57 (11th Cir. 2002) (any claim by habeas petitioner that he had received ineffective assistance during his state court new trial

and appeal proceedings, as result of his attorney's failure to attempt to recreate record of prayer given at his trial while witnesses' memories were fresh, was procedurally defaulted and did not have to be considered on federal habeas review, where petitioner had complained in state court only of his trial attorney's failure to see that prayer was recorded, not of counsel's performance during new trial proceedings or on appeal), *cert. denied*, 538 U.S. 988, 123 S.Ct. 1805, 155 L.Ed.2d 683 (2003).

If the court were to consider this ground, it would provide no basis for federal relief as it is without merit.  The only possible claim that petitioner might have on Cindy Schleicher's testimony was her seemingly contradictory testimony on the results of the medical examination.  If she had been challenged on that point, a credible response would have been that she simply did not remember it when her deposition was taken but that in recounting events in her mind in preparation for trial, she did remember it.  Petitioner thinks that would not be believed by the jury, but petitioner thinks none of the testimony against him should have been believed by the jury.  Thus, regardless of whether it would have been better for counsel to challenge Ms. Schleicher on that issue - and thereby possibly emphasize it even more - petitioner has not shown prejudice.  This is especially true when the state downplayed the report so as not to be seen as hiding it from the jury.  The fact was undisputed that the victim had intercourse after she was away from her father, so any medical examination would have been inconclusive. In that regard, the only way the medical examination report could possibly have helped the defendant would have been for it to prove that the victim had *never* been sexually molested *or* sexually active, an impossibility given the undisputed testimony.   Therefore, petitioner cannot show prejudice on this ground.

2. <u>Newly discovered evidence - juror misconduct.</u> (Ground 8 of Amended Petition)

Petitioner next contends juror misconduct prejudiced him.  He says that venirewoman Fulcher, who was ultimately elected Forewoman, lied on voir dire when she denied knowing one of the witnesses, DeWayne Jewson.  Moreover, he

says that Ms. Fulcher was in telephone contact with her husband Max Fulcher during the trial, and that he influenced her vote.

### A.  Clearly Established Federal Law

It is well recognized that a criminal defendant has a due process right to a competent and impartial tribunal, *i.e.*, "a jury capable and willing to decide the issue solely on the evidence before it."  *Smith v. Phillips*, 455 U.S. 209, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982).  Due process requires that a defendant have an opportunity post-trial to prove the existence of actual and identifiable prejudice of a juror which compromised the ability of the particular jury that heard the case to adjudicate fairly. *Id.*, *Chandler v. Florida*, 449 U.S. 560, 101 S.Ct. 802, 66 L.Ed.2d 740 (1981); *Howard v. Davis*, 815 F.2d 1429, 1431 (11th Cir. 1987); *Rogers v. McMullen*, 673 F.2d 1185 (11th Cir. 1982).  The appropriate standard of review was set forth by the Supreme Court in *McDonough Power Equipment, Inc. v. Greenwood*, 464 U.S. 548, 556, 104 S.Ct. 845, 78 L.Ed.2d 663 (1984):

> To obtain a new trial in such a situation, a party must first demonstrate that a juror failed to answer honestly a material question on voir dire, and then further show that a correct response would have provided a valid basis for a challenge for cause.  The motives for concealing information may vary, but only those reasons that affect a juror's impartiality can truly be said to affect the fairness of a trial.

*Id.*, 464 U.S. at 556, 104 S.Ct. at 850.  Bias may be established "either by express admission or by proof of specific facts showing such a close connection to the circumstances at hand that bias must be presumed."  *United States v. Carpa*, 271 F.3d 962, 967 (11th Cir. 2001).

A jury's verdict must be based solely upon evidence developed at trial.  *Smith v. Phillips*, 455 U.S. at 217, 102 S.Ct. at 946.  As the United States Supreme Court noted in *Turner v. Louisiana*, 379 U.S. 466, 472-73, 85 S.Ct. 546, 549-50, 13 L.Ed.2d 424 (1965),

> [i]n the Constitutional sense, trial by jury in a criminal case necessarily implies at the very least that the "evidence developed" against a defendant shall come from the witness stand in a public courtroom

where there is full judicial protection of the defendant's right of confrontation, of cross-examination, and of counsel.

A defendant has the burden of proving juror partiality or bias and must do so by a preponderance of credible evidence. *United States v. Winkle*, 587 F.2d 705, 714 (5th Cir. 1979);[10] *United States v. Riley*, 544 F.2d 237, 242 (5th Cir. 1976). Partiality or bias may be shown by proving that extraneous influences were considered by the jury and tainted the jury's deliberation. *Winkle*, 587 F.2d at 714. "'Extraneous influence' has been construed to cover publicity received and discussed in the jury room, consideration by the jury of evidence not admitted in court, and communications or other contact between jurors and third persons. . . ." *United States v. Campbell*, 684 F.2d 141, 151 (D.C. Cir. 1982).

### B.  Federal Review of State Court Decision

The Rule 3.850 court held an evidentiary hearing on this issue, and allowed additional discovery. Based on the evidence presented, the trial court found that (1) DeWayne Jewson's relationship with Ms. Fulcher was a casual acquaintance at best, and although she had met him at her husband's workplace, there was doubt that she even remembered his name or recognized it when it was read with the list of witnesses, (2) that Ms. Fulcher's acquaintance with DeWayne Jewson was immaterial and that there was no indication of bias or prejudice, and (3) there was no showing, other than petitioner's speculation, that there had been any improper discussion between Ms. Fulcher and her husband (exh. T).

The state court's  decision was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. As the state court pointed out, the general questions posed to the venire panel indicated that Ms. Fulcher would set aside her personal feelings and follow the law, would base the verdict on the testimony presented, and would presume petitioner was innocent until the state met the burden of proving each element of the crime beyond

---

[10]In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all former Fifth Circuit decisions rendered before October 1, 1981.

a reasonable doubt.  Furthermore, petitioner's appointed collateral counsel took the depositions of Max Fulcher and DeWayne Jewson.  DeWayne Jewson testified that he worked with Max Fulcher.  He explained that he met Ms. Fulcher on several occasions prior to the trial when she had visited her husband at the shop for lunch.  During these visits, he had brief casual conversations with her, and the Fulchers dined with DeWayne and other co-workers at a large conference table.  DeWayne admitted that it was possible that Ms. Fulcher did not know him by name.

As to the allegedly improper communication between Ms. Fulcher and her husband, DeWayne Jewson testified in his deposition that he suspected there had been improper communication between the two because (1) Mr. Fulcher once commented at work to a group of co-workers that his wife was a juror in the trial and (2) after the verdict, several co-workers approached DeWayne and expressed sympathy regarding the outcome of the trial, yet DeWayne had never discussed the trial at work.  However, DeWayne admitted that he never personally overheard any conversations by Mr. Fulcher discussing the trial with other employees; that he had no information that Mr. Fulcher was in fact the source of that information; and that he never considered the possibility that his co-workers could have learned of the results of the trial through the media.  (Ex. T, Dep. of DeWayne Jewson).  In his deposition testimony, Max Fulcher explicitly denied that his wife discussed the specifics of the trial with him during the trial.  (Id., Dep. of Max Fulcher).  Based on the foregoing, the state court's denial of relief on this claim was neither contrary to, nor an unreasonable application of, clearly established Supreme Court precedent.

    **3.**    <u>Lack of subject matter jurisdiction on two Rule 3.850 issues</u> **(Grounds 10 and 11 of Amended Petition**

Petitioner next argues that the state court lacked subject matter jurisdiction to rule on two of his grounds for post-conviction relief - that counsel was deficient in not moving for a new trial and that there was newly discovered evidence of juror misconduct.  Petitioner argues the court lost jurisdiction to address these issues due to the passage of time between his trial and his Rule 3.850 motion.  The claim presents something of an enigma.  If the state court lacked jurisdiction to hear his

claims because of the passage of time, it would appear that the motions would never have been heard, and petitioner's claims for relief would be unavailable to him.

To the extent petitioner suggests the state post-conviction proceeding was defective or unfair, this claim does not warrant federal habeas relief either. It is well established in the Eleventh Circuit that a § 2254 court is not an appropriate forum for a prisoner who wishes to challenge the process afforded him in state post-conviction proceedings. This is so, because such a claim represents an attack on a proceeding collateral to the prisoner's confinement and not the confinement itself. *Quince v. Crosby*, 360 F.3d 1259, 1261-62 (11th Cir. 2004) (affirming district court's denial of habeas relief based on state court judge's refusal to recuse himself from the Rule 3.850 hearing, explaining "while habeas relief is available to address defects in a criminal defendant's conviction and sentence, an alleged defect in a collateral proceeding does not state a basis for habeas relief."); *Spradley v. Dugger*, 825 F.2d 1566, 1568 (11th Cir. 1987) (per curiam) (concluding § 2254 claim that petitioner's due process rights were violated when state post-conviction court held no evidentiary hearing and failed to attach appropriate portions of record to its opinion "goes to issues unrelated to the cause of petitioner's detention [and] does not state a basis for habeas relief").[11]

---

[11]Other circuits agree.  *See, e.g., Trevino v. Johnson*, 168 F.3d 173, 180 (5th Cir.)(denying certificate of appealability on petitioner's claim that he was denied due process when state post-conviction court adopted state's proposed findings and conclusions three hours after they were filed with court, noting that a claim alleging errors in a state post-conviction proceeding does not entitle a petitioner to habeas relief in respect to his conviction, as it is an attack on a proceeding collateral to the detention and not the detention itself), *cert. denied*, 527 U.S. 1056, 120 S.Ct. 22, 144 L.Ed.2d 825 (1999); *Gerlaugh v. Stewart*, 129 F.3d 1027, 1045 (9th Cir. 1997) (noting established law that "errors concerning [the state post-conviction] process are not cognizable in federal habeas proceedings"), *cert. denied*, 525 U.S. 903, 119 S.Ct. 237, 142 L.Ed.2d 195 (1998); *Nichols v. Scott*, 69 F.3d 1255, 1275 (5th Cir. 1995) ("An attack on a state habeas proceeding does not entitle the petitioner to habeas relief in respect to his conviction , as it is an attack on a proceeding collateral to the detention and not the detention itself.") (internal quotes omitted); *Steele v. Young*, 11 F.3d 1518, 1524 (10th Cir. 1993) (holding that petitioner's challenge to state "post-conviction procedures on their face and as applied to him would fail to state a federal constitutional claim cognizable in a federal habeas proceeding"); *Franzen v. Brinkman*, 877 F.2d 26, 26 (9th Cir. 1989) (agreeing with the majority view and holding that "a petition alleging errors in the state post-conviction review process is not addressable through habeas corpus proceedings:); *Bryant v. Maryland*, 848 F.2d 492 (4th Cir. 1988) (following courts that have determined "claims of error occurring in a state post-conviction proceeding cannot serve as a basis for federal habeas corpus relief"); *Kirby v. Dutton*, 794 F.2d 245, 247 (6th Cir. 1986)

4.   <u>Record on appeal incorrect</u> (Ground 12 of Amended Petition)

Petitioner next complains that the record on his state appeal from denial of relief on his Rule 3.850 motion was in disarray and improperly prepared by the state court clerk.  Based on the principles discussed above, this claim does not state a basis for federal habeas relief.

5.   <u>Defendant forced to file post-conviction motions</u> (Ground 13 of Amended Petition)

Petitioner complains that after his Rule 3.850 motion was denied, the public defender who had been appointed to represent him at the Rule 3.850 evidentiary hearing ignored his request to file a motion for rehearing.  As a result, petitioner was forced to file the motion himself.  Petitioner contends he was prejudiced because when he later appealed the Rule 3.850 court's denial order, the Florida First DCA refused to consider the motion for rehearing because it was filed by petitioner instead of his counsel.  Title 28 U.S.C. § 2254(i) provides: "The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254."  Accordingly, petitioner is not entitled to relief on this claim.

6.   <u>Prima facie case not proven at trial</u> (Ground 14 of Amended Petition)

Petitioner next contends that there was insufficient evidence to support his conviction of molestation of a child under twelve.

A.  Clearly Established Supreme Court Law

Due process requires a state to prove each element of the offense beyond a reasonable doubt.  *Jackson v. Virginia*, 443 U.S. 307, 316, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).  When a federal court examines the sufficiency of the evidence on review, the role of the court is not to reweigh the evidence or to determine whether the evidence established guilt beyond a reasonable doubt.  *Id.* at 319.  The proper

_____

(holding that § 2254 was not available to challenge "a denial of the sixth amendment right to effective assistance of counsel, a denial of due process, and a denial of equal protection in the State post-conviction proceedings--claims unrelated to his detention").

inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, the federal court believes that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* Where there are conflicting inferences and disputes exist, this court must presume that the jury resolved such conflicts in favor of the prosecution, and must defer to that resolution. *Martin v. State of Alabama*, 730 F.2d 721,724 (11th Cir. 1984).

### B.  Federal Review of State Court Decision

This issue was presented to the state court on direct appeal.  The appellate court affirmed without opinion.  Petitioner maintains that proof of the first instance of molestation in Florida was after the family had moved to Tamarand Drive, which was after the victim's twelfth birthday, and that there was no proof of that essential element of the crime of capital sexual battery (victim under twelve).  However, the victim testified that the family moved to Florida when she was nine or ten, that after they arrived in Florida petitioner continued the molestation he had begun in Wisconsin or Illinois when she was seven, and that the first instance in Florida was in the print shop, not at Tamarand Drive (exh. TR, pp. 102-105).  There was evidence that petitioner worked at that print shop starting in February 1986.  The victim did not turn twelve until October 12, 1987.  Contrary to petitioner's contention, a rational trier of fact could have found beyond a reasonable doubt the essential element of the crime petitioner disputes--that petitioner molested the victim in Florida prior to her twelfth birthday.  Thus, petitioner is not entitled to relief on this claim.

### 7.  <u>Similar fact evidence improperly admitted</u> (Ground 15 of Amended Petition)

For his final ground for relief petitioner challenges the admission of similar fact evidence.  Petitioner contends the evidence was irrelevant and unduly prejudicial.  The record reveals that this claim was presented to the state court on direct appeal.  Petitioner argued there, as he does here, that "two portions of the [Florida] evidence code provide the framework for this issue," specifically, Fla. Stat. §§ 90.404(2)(a) and 90.403.  (*See* Ex. E, p. 19; Doc. 18, p. 80).  On direct appeal the

claim presented a lengthy discussion of *Heuring v. State*, 513 So.2d 122 (Fla. 1987)[12] and *Thomas v. State*, 599 So.2d 158 (Fla. 1st DCA 1992).

An evidentiary ruling of a state court may be a basis for federal habeas corpus relief only if (1) the ruling was erroneous and (2) the error deprived the defendant of a fundamentally fair trial. *Shaw v. Boney*, 695 F.2d 528, 530 (11th Cir. 1983) (citing cases). To establish a violation of fundamental fairness, the evidence erroneously admitted at trial "must be material in the sense of a crucial, critical, highly significant factor." *Jameson v. Wainwright*, 719 F.2d 1125, 1127 (11th Cir. 1983), *cert. denied*, 466 U.S. 975 (1984); *Futch v. Dugger*, 874 F.2d 1483, 1487-88 (11th Cir. 1989); *Machin v. Wainwright*, 758 F.2d 1431, 1433-34 (11th Cir. 1985). But if the ruling was not erroneous under state law, the court need not consider whether the evidence admitted was a critical, highly significant factor to the conviction. *Jameson*, 719 F.2d at 1127.

At issue before the state appellate court was the testimony of petitioner's stepdaughter Marijane Schleicher Valasquez and petitioner's own child Tammy Rose Jewson concerning petitioner's sexual predations upon them when they were young girls. The state appellate court affirmed petitioner's conviction, thereby finding either no violation of the state rule of evidence or, if there was a violation, that the error was harmless. Assuming without deciding that this claim was sufficient to alert the state court to a federal due process claim, petitioner's claim fails here because it is lacking in support. The evidence was relevant to material facts in issue, such as motive, opportunity, plan, knowledge, and absence of mistake or accident. Furthermore, the instances of familial sexual activity with all three girls were strikingly similar and shared unique characteristics which set them apart from

---

[12]*Heuring* allows as "similar fact evidence" sexual battery against another family member to "corroborate the victim's testimony." *Heuring*, 513 So.2d at 124-25. The similar fact evidence, however, "must meet a strict standard of relevance." *Id*., at 124. Specifically, "[t]he charged and collateral offenses must be not only strikingly similar, but they must also share some unique characteristics which sets them apart from other offenses." *Id*.

other offenses.  The state court's denial of relief on this claim was neither contrary to, nor an unreasonable application of, clearly established Federal law.

E.    <u>CONCLUSION</u>

Petitioner comes to this court with numerous complaints concerning his attorney's performance before, during, and after trial.  His position in essence is that if his attorney had just done the things he now (and then) insists should have been done he would have been acquitted, and particularly that he should not have been convicted without any medical/scientific proof of guilt, when the only testimony against him came from people who were shown to be untruthful.  Unfortunately for this petitioner, the weighing of evidence and determination of the truth is a function left to the jury.  Defense counsel made good work of the various contradictions in the witnesses' testimony, and also proved by independent witnesses that the victim made no mention of having been molested until long after the family left Florida. Even the issue concerning the medical report is a red herring, since petitioner has never shown that the report existed at the time of trial.  The undersigned has reviewed the record in detail, and has read the entire trial transcript.  The evidence of petitioner's guilt was strong even without a medical test.  There was little else counsel could have done.  The jury believed the state's witnesses and did not believe the petitioner.  It is apparent that had counsel done exactly as petitioner claims he should have done, the result would not likely have been different.

Accordingly, it is respectfully RECOMMENDED that the amended petition for writ of habeas corpus (doc. 4), challenging the conviction and sentence in *State of Florida v. Kenneth D. Jewson* in the Circuit Court of Santa Rosa County, Florida, case no. 90-861, be DENIED, that this cause be DISMISSED, and that the clerk be directed to close the file.

At Pensacola, Florida, this 11th day of March, 2005.

/s/ *Miles Davis*

**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO PARTIES

**Any objections to these findings and recommendations must be filed within ten days after being served a copy hereof.  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 701 (11th Cir. 1988).**